CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**, <br><br> Plaintiff, <br><br> v. <br><br> **Barry Baker,** in individual and representative capacity as trustee; **Carol Baker Zimmerman,** in individual and representative capacity as trustee**; Manus Chavakespongse**; and Does 1-10, <br><br> Defendants. | Case No. <br><br> **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Chris Langer complains of Defendants Barry Baker, in individual and representative capacity as trustee; Carol Baker Zimmerman, in individual and representative capacity as trustee; Manus Chavakespongse; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a

Complaint

specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California.

2. Defendant Barry Baker, in individual and representative capacity as trustee, owned the real property located at or about 5556 Santa Monica Blvd., Los Angeles, California, in March 2017.

3. Defendant Barry Baker, in individual and representative capacity as trustee, owns the real property located at or about 5556 Santa Monica Blvd., Los Angeles, California, currently.

4. Defendant Carol Baker Zimmerman, in individual and representative capacity as trustee, owned the real property located at or about 5556 Santa Monica Blvd., Los Angeles, California, in March 2017.

5. Defendant Carol Baker Zimmerman, in individual and representative capacity as trustee, owns the real property located at or about 5556 Santa Monica Blvd., Los Angeles, California, currently.

6. Defendant Manus Chavakespongse owned the Prime Time Pub located at or about 5556 Santa Monica Blvd., Los Angeles, California, in March 2017.

7. Defendant Manus Chavakespongse owns the Prime Time Pub ("Prime Pub") located at or about 5556 Santa Monica Blvd., Los Angeles, California, currently.

8. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities,

2

Complaint

connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

10. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

12. The Plaintiff went to the Prime Pub in March 2017 to have a beer.

13. The Prime Pub is a facility open to the public, a place of public accommodation, and a business establishment.

14. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of the Prime Pub.

15. However, there were no parking spaces marked and reserved for persons with disabilities during plaintiff's visit.

16. Currently, there is not a single parking space marked and reserved for persons with disabilities.

17. On information and belief, plaintiff alleges that there used to be a parking space marked and reserved for persons with disabilities but the parking space has either been paved over or been allowed to fade beyond

Complaint

recognition.

18. Defendants have no policy in place to make sure that parking space reserved for persons with disabilities remain in the parking lot for use by persons with disabilities.

19. Plaintiff personally encountered this barrier.

20. This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty and frustration.

21. As a result of not being able to have beer at this place, plaintiff had to go to elsewhere. Plaintiff was able to successfully have beer elsewhere.

22. Entrance into the Prime Pub is also one of the facilities, privileges, and advantages offered by Defendants to patrons of the business.

23. On information and belief, plaintiff alleges that the rear doorway clear passage width was less than 32 inches and inaccessible to wheelchair users.

24. Bar counters and tables are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Prime Pub.

25. Food or drink was served at a counter or bar for consumption by customers either seated on stools or standing at the counter/bar but there was no portion of the counter that was 34 inches in height or less and no accessible tables in the same area.

26. Currently, food or drink is served at a counter or bar for consumption by customers either seated on stools or standing at the counter/bar but there is no portion of the counter that is 34 inches in height or less and no accessible tables in the same area.

27. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Prime Pub.

28. The restroom doorway clear passage width was less than 32 inches and inaccessible to wheelchair users. In fact, the restroom door width is 27.5 inches and the restroom stall door width is 23.5 inches.

Complaint

29. The toilet stall was improperly configured and too small for wheelchair users, measuring 43.5 inches in width and 58 inches in depth.

30. However, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there were no grab bars.

31. There was no clear floor space in front of the disposable toilet seat cover dispenser because it was mounted on the wall behind the toilet.

32. The plumbing underneath the sink was not wrapped to protect against burning contact.

33. Currently, the restroom doorway clear passage width is less than 32 inches and inaccessible to wheelchair users.

34. Currently, the toilet stall is improperly configured and too small for wheelchair users, measuring 43.5 inches in width and 58 inches in depth.

35. Currently, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there are no grab bars.

36. Currently, there is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet.

37. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

38. Plaintiff would like to return and patronize the Prime Pub but will be deterred from visiting until the defendants cure the violations.

39. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

5

Complaint

40. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in fully compliance with federal and state access standards.

41. Plaintiff is and has been deterred from returning and patronizing the Prime Pub because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Prime Pub as a customer once the barriers are removed.

42. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

43. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiffs and against all defendants (42 U.S.C. section 12101, et seq.)

44. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

45. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

Complaint

with disabilities. 42 U.S.C. § 12183(a)(2).

46. Any business that provides parking spaces must provide a sufficient number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010 Standards § 208. The required minimum number of handicap parking spaces is dependent on the total number of parking spaces available. *Id.* According to the 1991 Standards, if a parking lot has 1-25 spaces, it must have at least 1 accessible parking space. 1991 Standards § 4.1.2(5)(a). And 1 in every 8 of those accessible parking spaces, but not less than 1, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, a parking lot with 1-25 spaces must have at least 1 accessible space and 1 of them must be van accessible. 2010 Standards § 208.2 & § 208.2.4.

47. Here, the failure to provide accessible parking spaces is a violation of the ADA.

48. Doorways must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.13.5.

49. Here, the failure to provide the 32 inch wide doorway opening is a violation of the ADA

50. Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be provided that is no higher than 34 inches above the floor or service shall be available at accessible tables within the same area. 1991 Standards § 5.2 and 4.32; 2010 Standards § 226.1. If seating is provided for persons in wheelchairs at the counter or bar, there must be knee clearance for wheelchair users measuring at least 27 inches high, 30 inches wide, and 19 inches deep. 1991 Standards § 4.32.3; 2010 Standards § 306.3 (the 2010 Standards

8

Complaint

actually require a different depth).

51. Here the failure to provide an accessible counter/bar is a violation of the law.

52. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

53. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

54. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b). Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

55. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

56. Here, the failure to provide compliant grab bars is a violation.

57. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

58. Here, the failure to provide such floor space is a violation of the law.

9

Complaint

59. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

60. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

61. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

62. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

63. Given its location and options, plaintiff will continue to desire to patronize the Prime Pub but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiffs and against all defendants) (Cal Civ § 51-53)

64. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

65. Because the defendants violated the plaintiffs' rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

66. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiffs, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: June 27, 2017                    CENTER FOR DISABILITY ACCESS

                                        By: _____
                                        Russell Handy, Esq.
                                        Attorney for plaintiffs

11

Complaint